# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BENNY TAL, | ) Case No. 1:12-CV-1922 |
| Plaintiff, | ) |
| | ) Judge Dan Aaron Polster |
| vs. | ) |
| | ) |
| JANET NAPOLITANO, | ) OPINION AND ORDER |
| | ) |
| Defendant. | ) |

On July 25, 2012, Plaintiff Benny Tal commenced this Title VII action on the basis of discrimination, harassment, and retaliation he allegedly endured as an employee of the Transportation Security Administration. He claims that, as a Transportation Security Officer at the Kona International Airport in Hawaii, he was subjected to discrimination on the basis of religion, race, and national origin, was verbally and physically abused by a superior officer, and was retaliated against for reporting workplace harassment.

Now before the Court is Defendant Janet Napolitano's motion. She argues the case should be dismissed because Plaintiff failed to exhaust his administrative remedies—a prerequisite to sue on a federal employment discrimination claim.

There is no dispute: Plaintiff failed to exhaust his administrative remedies. The sole issue is whether principles of equity excuse that failure. If so, the case can proceed; if not, the case must be dismissed.

I.  Factual Background

The key facts are taken from Plaintiff's affidavit.

Plaintiff was born in Israel in 1963 and served a combined twenty-one years in the Israeli military and police. He retired in 2001 with the rank of Sergeant Major and immigrated to the United States. He was naturalized in 2008 and then he took a position with the Transportation Security Administration at the Kona International Airport in Hawaii. Work began sometime around January 2010.

According to Plaintiff, the discrimination started immediately. During a training class early in his employment, one his supervisors, the Assistant Federal Security Director, told him "You Jews know too much." and "You Israelis think you are too clever." (Doc. # 13-1 at 2). When Plaintiff complained about the comments to the human resources department, it only made things worse. His supervisors now criticized his accent and forced him to needlessly repeat training exercises.

Plaintiff says he was also treated with hatred and intolerance by his co-workers. They taunted him with chants of "Hamas" and "Hezbollah," put pork in his lunch bag (pork is forbidden under his religious dietary rules), and put dairy products in his lunch bag when it already contained meat (also in violation of the dietary rules). (Id.). On several occasions, he left work to find someone had deflated his tires. Once, he found a swastika and the words "Dirty Jew" inscribed on the side of his car. (Id.).

From there, things get worse—and took a freakish turn. On the evening of March 15, 2010, three months after he had started with TSA, Plaintiff, alone on the beach after work, was approached by five masked men. They attacked him, called him a "Dirty Jew", demanded he leave Hawaii, and ordered him to quit the government. Though he was injured, Plaintiff did not

-2-

go to the hospital or file a police report. Why? He says was "too ashamed of being beaten up." (Id. at 3).

But he was not too ashamed to report the workplace harassment and discrimination, which he did the next day. He contacted a TSA Equal Employment Opportunity counselor to make a formal complaint. This invited another round of attacks on the beach six days later, at around sunset, this time by six masked individuals, one of whom brandished a gun. They choked him, beat him across the chest and torso, and told him to "Go back to Israel." and "You don't belong here." (Id.) Plaintiff thinks he recognized one of the voices as belonging to his boss, the Assistant Federal Security Director.

Fearing for his safety, Plaintiff left Hawaii and returned to Cleveland where he stayed a few months with his ex-wife.[1] But apparently 5,000 miles were not enough to keep the harassers at bay. On March 29, 2010, Plaintiff was shopping at the Whole Foods supermarket in University Heights when two intimidating men approached him and told him to resign from TSA. He did so the next day.

But he did not drop his EEO complaint. In fact, on April 14, 2010, Plaintiff completed and returned the alternative dispute resolution paperwork TSA had sent him a few days earlier. (Doc. # 10-2, at 2).

A couple of months later, Plaintiff awoke in the morning to find his cat decapitated. Its head and body were dumped in a plastic bag and placed at the front door. This being too much to bear, Plaintiff withdrew his EEO complaint by letter dated June 7, 2010. (Doc. # 10-2 at 19). The letter stipulated the withdrawal was voluntary and not the result of threat, coercion,

---

[1] He told her about the attacks and showed her bruises on his chest. (Doc. # 13-2).

intimidation, promise, or inducement. (Id.).

On December 13, 2011, shortly after moving out of his ex-wife's house, Plaintiff contacted an EEO counselor about reopening his case. He re-filed his complaint on February 15, 2012. But on May 1, 2012, the EEO dismissed the complaint as untimely. Plaintiff then elected to file the instant lawsuit.

II.     Procedural History

Acting *pro se*, Plaintiff commenced this lawsuit by filing a short, handwritten complaint, which included a truncated version of the factual allegations detailed above. (The full version of the story came out later, after the Court appointed him *pro bono* counsel.) The Government, in turn, filed a motion to dismiss, arguing that the lawsuit is barred because Plaintiff failed to exhaust his administrative remedies. In support of its motion, the Government attached two affidavits—*i.e.*, extra-pleading material. *See* FED. R. CIV. P. 12(d).

Plaintiff, still acting *pro se*, filed a two-page, handwritten opposition brief in which he admitted his failure to exhaust his administrative remedies but also offered an excuse: "I was made to withdraw my complaint by threats...." (Doc. # 11 at 2).

On the basis of this short, but potentially case-saving allegation, the Court appointed Plaintiff *pro bono* counsel. The Court wrote:

> If it is true that Plaintiff withdrew his administrative complaint because of threats, thereby jeopardizing his administrative and judicial remedies, he may have a claim for equitable tolling—or he may otherwise be excused from not fully pursuing his administrative remedies. To assist Plaintiff in fleshing out this argument, the Court will appoint counsel under the Court's pro bono civil case protocol.

(Doc. # 12 at 1–2).

The Court directed the attorney "to show cause why Plaintiff's failure to exhaust his

administrative remedies should not result in dismissal...[and] to provide clear factual support (*e.g.*, a sworn affidavit) detailing the alleged threats." (Id. at 2). This the attorney did.

  A. Conversion from a Rule 12(b)(6) to a Rule 56 motion

By presenting matters outside the pleadings—*i.e.*, two affidavits—the Government triggered section (d) of Rule 12 of the Federal Rules of Civil Procedure, which explains when a Rule 12(b)(6) motion to dismiss must be converted to a Rule 56 motion for summary judgment. FED. R. CIV. P. 12(d); 5C CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2004) ("The element that triggers conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material.").

The Court, exercising its discretion, decided to accept the Government's extra-pleading material. In so doing, the Court officially converted the motion to dismiss into a motion for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d) (When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Consistent with Rule 12(d), the Court gave Plaintiff an opportunity—indeed directed him—to present material pertinent to the motion. Plaintiff submitted two affidavits: one of his own; and another by his ex-wife. The Government came back with a reply.

III. Standard of Review

Summary judgment is appropriate if the party making the motion "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court must examine the evidence and draw all reasonable inferences in favor

of the party opposing the motion. *Jones v. Potter*, 488 F.3d 397, 402–03 (6th Cir. 2007). If, after reviewing the record, a rational factfinder could not find for the non-moving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. Analysis

Before a federal employee may bring a Title VII workplace-discrimination lawsuit, he must first exhaust his administrative remedies. *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003). This requires him to initiate contact with an EEO counselor within 45 days of the alleged discrimination to try and resolve the matter informally. 29 C.F.R. § 1614.105(a) (2012). If informal counseling proves unsuccessful, the employee has 15 days to file a formal complaint. *Id.* § 1614.105(d). At that point, the employee can sue in federal court, but he has a limited amount of time: 90 days after the agency's final decision or 180 days after filing the administrative complaint, depending on the circumstances. *Id.* § 1614.407. Failure to follow these steps is grounds for dismissing the lawsuit. *Steiner*, 354 F.3d at 435. Of course, when principles of equity demand it, the requirements may be excused. *Id.*

But equitable exceptions—waiver, estoppel, and tolling—should be allowed "only sparingly," *Id.* (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)), and only in "compelling cases." *Id.* (citation omitted). Five factors are to be considered: (1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time

constraint. *Id.* These factors are not exhaustive, and the issue is determined on a case-by-case basis. *Id.*

Plaintiff does not claim a lack of notice of the administrative deadlines. Nor does he argue he was diligent in pursuing his rights. In fact, he wasn't: He let eighteen months pass after withdrawing his administrative complaint in June 2010 to resurrect it in December 2011. Plaintiff instead pins his argument on the supposed misconduct of Defendant.

It is true that a claim for equitable tolling may be premised on the defendant's misconduct—such as threats, harassment, or intimidation—so long as the plaintiff actually and reasonably relied on the misconduct. *Bridgeport Music v. Diamond Time*, 371 F.3d 883, 891 (6th Cir. 2004). But is there any truth to Plaintiff's allegations of misconduct?

It is axiomatic that a court, in considering a summary judgment motion, must look at the facts in a light most favorable to the non-moving party and draw all reasonable inferences from those facts in his favor. But it is equally manifest that a judge need not leave his commonsense at the door. Indeed, a court may disregard evidence that is "too incredible to be believed." 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2727 (3d ed. 1998). That is what we have here: facts too fantastic to be believed. Even Plaintiff's counsel recognizes the striking resemblance between his client's story and a work of Hollywood fiction: *The Godfather*. (Doc. # 13 at 1).

Less plausible than the facts are the inferences Plaintiff asks this Court to draw from them. Even assuming Plaintiff was the victim of two beatings by masked gunmen, Plaintiff offers no reasonable link between the misconduct and TSA. He likewise offers nothing better than conjecture to connect TSA with the parking-lot encounter and the decapitation of his cat,

thousands of miles away from where this case arose. As the Government points out, "if Plaintiff plausibly believed that TSA agents—who are...responsible for the safety of our nation's airways—were involved in acts of extreme violence, presumably he would have immediately reported the assaults to the authorities. This is especially true given that Plaintiff is a former law enforcement officer with a combined 21 years of service with the Israeli military and Israeli police." (Doc. # 14 at 4). No rational juror would credit these extreme and sensational allegations.

V.  Conclusion

Plaintiff's *pro bono* counsel, Matthew Besser, deserves praise for his thoughtful, well-written brief. Excellent though the brief is, it is not enough to overcome his client's tale of bad deeds.

Plaintiff is not excused from his failure to exhaust his administrative remedies. Accordingly, Defendant's motion (Doc. # 10) is granted and the case dismissed.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster 1/8/13*
**Dan Aaron Polster**
**United States District Judge**